1  WHATLEY KALLAS, LLP
   Alan M. Mansfield (Of Counsel)
2  (SBN 125998)
   amansfield@whatleykallas.com
3  10200 Willow Creek Rd., Ste. 160
   San Diego, CA 92131
4  Tel: (619) 308-5034
   Fax: (855) 274-1888
5
   Catherine I. Hanson (Of Counsel)
6  (SBN 104506)
   chanson@whatleykallas.com
7  1 Sansome Street, 35th Fl., PMB #131
   San Francisco, CA 94104
8  Tel: (415) 860-2503
   Fax: (888) 331-9633
9
   *Attorneys for Plaintiffs*
10

**CASE UNSEALED PER ORDER OF COURT**

FILED

JUN 16 2014

11              **UNITED STATES DISTRICT COURT**

12        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

13  UNITED STATES OF AMERICA,        CASE NO.: 14 CV 141 C MMA RBB

14              Plaintiff,           ~~FILED UNDER SEAL~~

15  SCOTT L. BROWN, M.D.             **COMPLAINT FOR VIOLATION OF**
    individually and through SCOTT L. **FALSE CLAIMS ACT, 31 U.S.C. §**
16  BROWN, M.D., A Professional      **3729,** *et seq.*
    Corporation d/b/a/ SAN DIEGO
17  UROLOGY ASSOCIATES,
    RELATOR,
18
                Plaintiff/Relator,
19                                   **DEMAND FOR JURY TRIAL**
            v.
20
    PLATINUM HEALTH
21  INFORMATION SYSTEMS, INC.;
    and SK UBCARE CO., LTD.,
22
                Defendants.
23

24      Comes Now Relator Scott L. Brown, M.D., individually and through SCOTT

25  L. BROWN, M.D., A Professional Corporation d/b/a/ SAN DIEGO UROLOGY

26  ASSOCIATES, on behalf of the United States of America, by and through his

27  undersigned counsel, and brings these claims against Platinum Health Information

28  Systems, Inc., a California Corporation and SK UBcare Co., LTD, a South Korean

-1-
COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT

ORIGINAL

Corporation, as follows all on information and belief, which allegations will likely have evidentiary support after an opportunity for further investigation and discovery, except where specifically identified as being based on personal knowledge:

### Introduction

1.     This action is brought by Relator pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, to recover penalties and damages from Defendants, Platinum Health Information Systems, Inc. ("PHIS" or "Skycare"), and SK UBcare Co., LTD ("SK UBcare"), hereinafter sometimes collectively referred to as "Defendants", as a result of false and fraudulent claims for payment knowingly presented by Defendants to the United States Government (the "Government").

2.     Skycare is an Electronic Health Record ("EHR") company that does business in this District and throughout the United States, with its principal executive offices located in Santa Ana, California.  A substantial portion of its business involves providing EHRs to physicians and other health care providers who are eligible for incentive payments from the Centers for Medicare and Medicaid Services ("CMS") pursuant to the HITECH Act, Section 13001, *et seq.* of the American Recovery and Reinvestment Act ("ARRA"), associated with "meaningful use" of an EHR.  Platinum Health Information Systems, Inc. changed its fictitious business name from "PlatinumMD" to "Skycare" after it was acquired by UBcare, the largest EHR company in South Korea, in 2012.

3.     During the course of Relator's efforts to implement the EHR he purchased from Skycare, Relator became aware of Defendants' practices of submitting false and fraudulent claims to the United States Government for payment of "meaningful use" incentive payments that had not been earned.  The Defendants thus submitted false documents to the Government to receive funds not due to Defendants or their customers.

**Parties**

4.    On personal knowledge, this action is filed by *Qui Tam* Relator, Scott L. Brown, M.D., individually and through SCOTT L. BROWN, M.D., A Professional Corporation d/b/a/ SAN DIEGO UROLOGY ASSOCIATES.  Dr. Brown is a board certified urologist practicing in San Diego, California with his medical group, San Diego Urology Associates. He is a resident of the United States and a resident of the State of California and this District.  He brings this action on behalf of the United States of America.  Relator purchased an EHR from Platinum Health Information Systems, Inc. on or about August 25, 2011 in San Diego, California.

5.    Defendant, Platinum Health Information Systems, Inc. ("PHIS"), is a California corporation with its principal executive offices in Santa Ana, California, originally doing business as "PlatinumMD" and now as "Skycare."  Its business address is 2850 Red Hill Avenue., Suite 220, Santa Ana, California 92705.  The scheme at issue was continued and compounded after PHIS was acquired by SK UBcare Co., Ltd. ("UBcare"), based in Seoul, South Korea, in July 2012.  SK UBcare indicates on its website that it is the largest EHR company in South Korea. Defendant represents it is an EHR company that includes "Stimulus Recovery Experts – Our focus is maximizing your incentives" at the top of its webpage, and transacts business in this District and nationwide.

6.    Defendant, SK UBcare Co., Ltd., is the largest South Korean EHR company, with its principal place of business in Seoul, Korea.  SK UBcare acquired PHIS in July 2012.

**Jurisdiction and Venue**

7.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331; 31 U.S.C. § 3730 (B)(1); and 31 U.S.C. § 3732 (a).

8.    The allegations contained herein are not based upon a "public disclosure" within the meaning of 31 U.S.C. § 3729 (e)(4)(A).  Furthermore,

Relator is an "original source" of the information on which this action is based within the meaning of 31 U.S.C. § 3730 (e)(4)(B).

9.     Venue is proper in this District under 31 U.S.C. § 3732(a), which provides that any action under 31 U.S.C. § 3730 "may be brought in any judicial district in which the Defendant . . . can be found, resides, transacts business, or in which any act proscribed by § 3729 occurred." Defendants transact business in this District, and did so at all times relevant to this Complaint.

10.     A copy of this Complaint and a written disclosure statement setting forth and enclosing all material evidence and information Relator possesses, pursuant to the requirements of 31 U.S.C. § 3730 (b)(2), has been provided to representatives of the United States.   This Complaint is filed *in camera*, concurrently with a motion to file the Complaint under seal, and may not be served upon Defendants until further order of the Court.

### Facts

11.     The American Recovery and Reinvestment Act ("ARRA") included a federally funded incentive program to encourage physicians to implement EHRs in their practices.  Specifically, physicians who participated in the Medicare program were eligible for up to $44,000 in federal incentive payments if they engaged in the "meaningful use" of certified EHR technology over the course of five years between 2011 and 2016.  The final amount of stimulus payment was also based on the physician's annual Medicare billings. *See* 42 C.F.R. § 495.2, *et seq.*  ARRA also included a stick.  Beginning in 2015, physicians who do not demonstrate "meaningful use" will see their Medicare payments reduced by one percent (1%) in 2015, two percent (2%) in 2016, and three percent (3%) in 2017 and every year thereafter.

12.     In response to this legislation, and based on representations by Defendants' representatives that their EHR software would be fully operational consistent with the Meaningful Use criteria set forth below, Relator purchased

1   Defendants' PlatinumMD EHR product, executing the purchase contract in San
2   Diego, California, on August 25, 2011.   That contract called for payment of
3   $22,850.00, a monthly maintenance fee of $395.00 to cover Relator's physician
4   employee during the first three years, and then on-going monthly fees to cover the
5   on-going software and maintenance support for the practice. Relator made an initial
6   payment of $3,427.50.   Relator believes that another $9,711.25 was paid on his
7   behalf by Bostwick Laboratories. Bostwick offered to make a contribution toward
8   Relator's EHR pursuant to the Stark Law exception for EHR contributions, 42
9   C.F.R.§ 411.357(w). Relator has not made any further payments to Defendants, but
10   he and his staff spent time, unsuccessfully, trying to get the EHR implemented.

11   13.   Prior to purchasing Defendants' EHR, Defendant PHIS disseminated
12   and Relator received marketing materials highlighting the availability of ARRA
13   stimulus funds, including a document entitled "Stimulus Pre Qualifier", which asked,
14   among other things, for information concerning the amount of Relator's monthly
15   Medicare and MediCal billings.

16   14.   Subsequent to entering into this Agreement, Defendants did not
17   implement the EHR as promised. Indeed, after making the initial copy of Relator's
18   existing database, which soon became obsolete, Defendants did very little work
19   towards implementation. Only minimal training was provided to the office staff, the
20   promised templates relevant to Relator's medical practice were never created, and a
21   "go-live" date was initially set but then passed and never re-set. Defendants' staff
22   changed regularly.   Relator's repeated calls to the Defendants for assistance were
23   often not returned.

24   15.   Through the course of his efforts to get PHIS to implement an EHR in
25   his practice, Relator became aware of and acquired first-hand knowledge of
26   incidents of apparent Medicare fraud committed by Defendants and on their behalf
27   by Defendants' employees. Relator has direct and independent knowledge of the
28   incidents of Medicare fraud described below.

16.    Despite the fact that Defendants had recognized that the PHIS EHR software was not operational by the end of 2011, and thus did not satisfy the "meaningful use" criteria, without Relator's knowledge, approval, authorization or consent, Defendants logged on to the federal government website used to attest to "meaningful use" compliance, and falsely completed all the information required to attest for "meaningful use" incentives in 2011, purportedly on behalf of Relator.

17.    Defendant PHIS sent to Relator or his representatives a document provided to him by Defendant PHIS captioned "Stimulus Enrollment." Relator's assistant completed that document and sent it to Defendant PHIS on or about October 31, 2011. Defendants represented that document to be no more than what it said - information necessary to enroll physicians in the EHR incentive program. Relator had no idea that Defendant PHIS intended to, and actually did, use the information on the form to access the federal government's website as Relator's alleged "agent" and falsely attest that Relator had met the "meaningful use" requirements.

18.    That federal government website (https://ehrincentives.cms.gov) required attestation on compliance with each and every one of the following requirements:

a.    Fifteen Meaningful Use Core Measures;

b.    Five of the ten Meaningful Use Menu Measures;

c.    Three of the Clinical Quality or Alternative Clinical Quality Measures; and

d.    Three from a list of Additional Clinical Quality Measures.

That website further required a separate attestation to each of the following two statements:

a.    "The information submitted accurately reflects the output of the certified EHR technology."

/ / /

b.    "The information submitted for CQMs was generated as output from an identified certified EHR technology."

19.    The federal government website also included an "Attestation Disclaimer" page, which included three separate warnings not to file false claims. First, the following warning appears at the top of the page:

"NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

Second, the following warning appears in the middle of the page:

"<u>USER WORKING ON BEHALF OF A PROVIDER: I certify that I am attesting on behalf of a provider who has given me authority to act as his/her agent. I understand that both the provider and I can be held personally responsible for all information entered. I understand that a user attesting on behalf of a provider must have an Identity and Access Management system web user account associated with the provider for whom he/she is attesting.</u>"

Finally, the following warning appears further down the page:

"NOTICE: Anyone who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws."

20.    Relator unexpectedly received an electronic funds transfer from CMS for $18,000 in April of 2012. Upon receipt of such monies, Relator's assistant contacted PHIS. Relator asked his assistant to make this call because Relator could not understand how he could be entitled to this money, since the EHR was still not operational. The assistant was transferred to a woman who worked for PHIS, who first inquired if Relator had received their stimulus monies. When the assistant

1   responded yes and said she was calling to inquire why they had done so since they

2   had not met the Meaningful Use criteria, Defendants' representative assured the

3   assistant that all that was required to receive the first year stimulus fund payment was

4   to have signed a contract with a certified EHR vendor by a certain date. Nonetheless,

5   despite receiving this representation and assurance the money was lawfully claimed,

6   Relator never used this money and, as noted below, refunded it as soon as it was

7   requested.

8        21.    Relator continued to contact Defendants about their on-going failure to

9   make his EHR operational. Defendants occasionally emailed notices of software

10  enhancements, making it appear that they were working on improving the product.

11  However, Defendants never completed the implementation, nor set a go-live date.

12       22.    On June 5, 2012, Relator received an email from Defendants describing

13  how Defendants' software could be used to obtain Medicare's ePrescribing bonus.

14  This document seems to suggest that it is not necessary to actually submit

15  prescriptions electronically to obtain the bonus; rather, all that is required is to use a

16  shortcut programmed into the EHR that adds "G8553" to claims with certain CPT

17  codes, which are also listed in the document. Relator received a similar email

18  regarding the submission of codes to claim patient education information had been

19  distributed for "meaningful use" compliance on or about June 21, 2012.

20       23.    On December 6, 2012, Defendants sent an email to Relator's medical

21  practice that stated:

22       "Some healthcare providers that have attested to Stage 1 Meaningful

23       Use have begun to receive letters regarding their attestation. Though

24       not officially announced, HHS has designated the accounting firm of

25       Figloiozz [sic] and Company to begin auditing. Figliozzi has operated

26       in the health care industry since 1987 and specializes in Medicare

27       compliance audits."

28  ///

1   Attached to the email was a one-page explanation of the audit process on

2   PlatinumMD letterhead. This document closed with the following:

3       "This letter is to assure you that PlatinumMD will provide all

4       information and support any effort you may face in the event you are

5       audited.

6       If you have questions or concerns, please do not hesitate to call us."

7   At the bottom of this document were the logos for both Defendants. The UBcare

8   logo included the tagline "PlatinumMD is a subsidiary of SK UBcare Corporation."

9       24.    Neither the December 6, 2012 email nor its attachment revealed or

10  disclosed that Defendants had falsely attested to "meaningful use" compliance on

11  Relator's behalf. Rather, it appeared to be a form email and letter attachment, similar

12  to other general communications Relator had received from Defendants.

13      25.    On July 31, 2013, Defendants received an email from Peter Figliozzi,

14  the CMS authorized contractor for HITECH EHR Meaningful Use Audits. Although

15  the email was addressed to Relator, it was emailed to iphone.1005@gmail.com, an

16  email address of which Relator had no knowledge and to which he had no access.

17  Presumably, this was the email address provided by the PHIS employee who had

18  fraudulently attested that Dr. Brown's practice had attained "meaningful use." The

19  email explained that Relator had been selected for a HITECH EHR Meaningful Use

20  Audit for payment year one. It instructed Relator to submit all the requested

21  information by August 28, 2013, and provided a login name and password. The

22  email also asked for confirmation of receipt, and confirmation of the contact name

23  and email address of the person to handle the audit.

24      26.    Defendants did not inform Relator of this email.

25      27.    On or about October 2, 2013, a representative of the Figliozzi firm

26  called Relator's office. Relator was still unaware at this point that PHIS had falsely

27  attested to his compliance with the Meaningful Use requirements or that he had been

28  / / /

1   audited, and does not believe this call was returned by the Figliozzi firm after his

2   office returned their call.

3       28.   On October 7, 2013, Relator received a certified letter from

4   Mr. Figliozzi at Relator's business address. That letter stated that the auditor had not

5   heard anything in response to the July 31st email referenced above. The letter further

6   indicated that if the auditor did not receive the requested documentation by

7   October 18, 2013, Relator's "meaningful use" incentive payment would be recouped.

8   This was the first notification Relator received of the HITECH EHR audit.

9       29.   Upon receipt of this letter, Relator immediately contacted Defendants to

10   find out what was going on. Relator still had no idea that Defendants had

11   fraudulently attested that his practice met the "meaningful use" requirements.

12   Indeed, despite his efforts, Relator had been unable to get Defendants to complete the

13   initial implementation and set a go-live date.

14       30.   Defendants put Relator in touch with Joshua Garth, a PHIS employee.

15   Mr. Garth did not inform Relator about Defendants' fraudulent "meaningful use"

16   attestation on Relator's behalf. Rather, Mr. Garth simply indicated to Relator that

17   Mr. Garth would handle it.

18       31.   Mr. Garth then sent an email on October 17, 2013 to Deborah Pisano,

19   the auditor handling Relator's audit, asking for an extension. That email read:

20           "It is taking some time for [Relator] to get his files together to submit.

21           I am formally requesting an audit extension for [Relator] (NPI:

22           [Relator's NPI number])."

23   Mr. Garth did not inform Relator about this request.

24       32.   Ms. Pisano sent an email back to Mr. Garth on October 18, 2013

25   informing him that no extension would be granted. Again, Mr. Garth did not

26   inform Relator of this response.

27       33.   On October 24, 2013 Mr. Figliozzi emailed a copy of the final

28   "HITECH EHR Meaningful Use Audit Determination Letter" to Mr. Garth. In that

-10-

letter, Mr. Figliozzi concluded Relator had not met the meaningful use criteria for all the following reasons:

- Failed to demonstrate access to a CEHRT system
- Failed Eligible Professional Meaningful Use Core Measure 1 - CPOE for Medication Orders
- Failed Eligible Professional Meaningful Use Core Measure 2 - Drug Interaction Checks
- Failed Eligible Professional Meaningful Use Core Measure 3 - Maintain Problem List
- Failed Eligible Professional Meaningful Use Core Measure 4 – e-Prescribing (eRx)
- Failed Eligible Professional Meaningful Use Core Measure 5 - Active Medication List
- Failed Eligible Professional Meaningful Use Core Measure 6 - Medication Allergy List
- Failed Eligible Professional Meaningful Use Core Measure 7 - Record Demographics
- Failed Eligible Professional Meaningful Use Core Measure 8 - Record Vital Signs
- Failed Eligible Professional Meaningful Use Core Measure 9 - Record Smoking Status
- Failed Eligible Professional Meaningful Use Core Measure 11 - Clinical Decision Support Rule
- Failed Eligible Professional Meaningful Use Core Measure 12 - Electronic Copy of Health Information
- Failed Eligible Professional Meaningful Use Core Measure 13 - Clinical Summaries

///

COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT

- Failed Eligible Professional Meaningful Use Core Measure 14 - Electronic Exchange of Clinical Information
- Failed Eligible Professional Meaningful Use Core Measure 15 - Protect Electronic Health Information
- Failed Eligible Professional Meaningful Use Menu Set Measure 1 - Drug Formulary Checks
- Failed Eligible Professional Meaningful Use Menu Set Measure 3 - Patient Lists
- Failed Eligible Professional Meaningful Use Menu Set Measure 4 - Patient Reminders
- Failed Eligible Professional Meaningful Use Menu Set Measure 5 - Patient Electronic Access
- Failed Eligible Professional Meaningful Use Menu Set Measure 10 - Syndromic Surveillance Data Submission.

34.     Again, Mr. Garth did not inform Relator of this letter.

35.     On October 28, 2013, PHIS's Director of Sales, Jeffrey Jones, and its implementation manager, David Ziemer, met with Relator to try to convince him to stay with their EHR company.  They suggested that now that they had been acquired by SK UBcare, they had the capacity to finally complete Relator's EHR implementation.  They consistently refused to take responsibility for Defendants' fraudulent submission of the attestations for "meaningful use" by the Relator. Instead, they blamed one of Defendants' employees, a mysterious, unnamed woman, for having made the submission. They failed to acknowledge both Defendants' responsibility for the acts of their employees, and their responsibility for the continued misrepresentation of the situation to the government's "meaningful use" auditors by Mr. Garth.  Indeed, they still did not provide Relator with a copy of the final "HITECH EHR Meaningful Use Audit Determination Letter," or even tell Relator that they had received it.

36.     Relator did not learn about the final audit determination and this whole course of events until November 6, 2013 when he took the initiative to call Ms. Pisano, the auditor who had been assigned to his case.  After talking with her, Relator finally received a copy of the Audit Determination Letter, as well as a copy of the preceding email correspondence between Mr. Garth and the auditor. Ms. Pisano emailed this whole email chain to Relator at his request

37.     In the course of his conversation with Ms. Pisano, Relator learned that at least one other physician who had purchased Defendants' PlatinumMD product was also being audited and had used the same iphone email address referenced above.

38.     On November 15, 2013 Relator, through his counsel, relayed the above facts to Mark Korpela, Director of the Division of Provider Audit Operations for CMS.

39.     Relator received a formal request for repayment of the incentive payment dated November 20, 2013.

40.     Relator repaid the incentive payment to the federal government immediately upon receipt of the repayment request. Relator has transacted no further business with Defendants, and has had to expend resources to contract with another EHR provider.

## COUNT I

41.     The United States hereby incorporates all previous paragraphs by reference as if fully stated herein.

42.     Defendants have violated the following provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, which state:

(a)     liability for certain actions.-Any person who-

     (1)     knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; [or]

* * *

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,500.00 and not more than $11,000.00, plus 3 times the amount of damages which the Government sustains because of the act of that person, except that if a court finds the [the violator cooperated completely with investigations, etc., in which case the court may assess not less than 2 times the amount of damages.]   A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

43.   As described in this Complaint, it appears Defendants have knowingly presented false and/or fraudulent claims to the United States Government for payment of "meaningful use" incentive payments by the following actions: (i) misrepresenting their intentions to health care providers in order to obtain the confidential information necessary to access the federal government's "meaningful use" attestation system; (ii) misrepresenting themselves on the federal government's attestation "meaningful use" website as a healthcare provider, or as a person authorized by a healthcare provider to make a "meaningful use" attestation;

1 (iii) submitting false and fraudulent documentation for, and falsely attesting to

2 satisfaction of, each and every one of the 26 separate "meaningful use"

3 requirements; (iv) falsely attesting that "The information submitted accurately

4 reflects the output of the certified EHR technology;" (v) falsely attesting that "The

5 information submitted for CQMs was generated as output from an identified certified

6 EHR technology;" and (vi) failing to respond truthfully to the HITECH EHR auditor

7 and instead to fraudulently suggest that Relator met the "meaningful use"

8 requirements but simply needed more time to submit the requested documentation.

9       44.     Relator believes he was not the only person subjected to this scheme but

10 that Defendants made similar representations on behalf of additional physicians.

11                                  **Prayer for Relief**

12       WHEREFORE, the United States respectfully requests this Court to enter an

13 Order granting the following relief:

14       1.     A declaratory judgment that Defendants violated the False Claims Act,

15 31 U.S.C. § 3729, *et seq.;*

16       2.     Civil penalties against Defendants not less than $5,500.00 and not

17 more than $11,000.00 per false claim (*i.e.*, each of the separate attestations made by

18 Defendants to the federal government);

19       3.     Three (3) times the amount of damages which the Government has

20 sustained because of the acts of Defendants;

21       4.     Reasonable attorneys' fees and costs associated with obtaining the

22 above relief; and

23       5.     Any and all such relief that this Court deems proper under the

24 circumstances.

25 / / /

26 / / /

27 / / /

28 / / /

1

## JURY TRIAL DEMAND

2      Plaintiff demands a trial of this action by a jury on all causes of action so

3   triable.

4   Dated:  June 10, 2014                    WHATLEY KALLAS, LLP

5                                            By: _____
                                                 ALAN M. MANSFIELD
6                                                (Of Counsel) (SBN: 125998)
                                                 amansfield@whatleykallas.com
7                                            10200 Willow Creek Road, Suite 160
                                             San Diego, CA 92131
8                                            Tel: (619) 308-5034
                                             Fax: (855) 274-1888
9
                                             Catherine I. Hanson
10                                           (Of Counsel) (SBN 104506)
                                             chanson@whatleykallas.com
11                                           1 Sansome Street, 35th Fl., PMB #131
                                             San Francisco, CA 94104
12                                           Tel: (415) 860-2503
                                             Fax: (888) 331-9633
13
                                             Attorneys for Plaintiff
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT